IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| VEERA V. VINJARAPU, *et al.*, | * | |
| Plaintiffs, | * | |
| vs. | * | Civil Action No. ADC-19-3306 |
| APARNA GADIYARAM, *et al.*, | * | |
| Defendants. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## **MEMORANDUM OPINION**

Defendants, Aparna Gadiyaram, Sindhusha Garla, Srikanth Gadiyaram, Vamshi Gandham, Janarthanan Thamiselvan, Vinorat Rajajegaram, Satish Veeraperumal, ASVS, LLC ("ASVS"), and CGC, LLC ("CGC"), move this Court to compel arbitration of all claims brought by Plaintiffs, Veera V. Vinjarapu and Sateesh Kandavilli, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, or, in the alternative, for the partial dismissal of Plaintiffs' Complaint for conversion, breach of contract, unjust enrichment, misrepresentation, fraud, mail fraud, wire fraud, and for an accounting (the "Motion") (ECF No. 13). After considering the Motion and the responses thereto (ECF Nos. 20, 21, 22), the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2018). For the reasons stated herein, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motion to Compel Arbitration. The Court then GRANTS IN PART Defendants' alternative Partial Motion to Dismiss as to Counts XV and XVI.

### FACTUAL BACKGROUND

This lawsuit arises out of the creation and operation of two Maryland Limited Liability Companies, ASVS and CGC. ASVS filed its Articles of Incorporation in Maryland on March 16, 2018. ECF No. 1 at 6, ¶ 25. On May 20, 2018, Plaintiff Vinjarapu, Defendant Aparna, and

1

Defendant Sindhusha entered an Operating Agreement to become partners of ASVS, in which Plaintiff Vinjarapu was a silent partner. *Id.* at 6, ¶ 26. The partners entered a Revised Operating Agreement on December 10, 2018, which did not materially alter the substance of the first agreement. *Id.* at 7, ¶ 28. The purpose of ASVS was to own and operate the Haldi Restaurant. *Id.* at 7, ¶ 29.

After entering the ASVS Operating Agreement, on May 29, 2018, Plaintiff Vinjarapu paid $59,107.46 into the ASVS bank account as a capital contribution. *Id.* at 6, ¶ 27. Since her initial capital contribution, Plaintiff Vinjarapu has contributed more than $94,015 in cash and equipment purchases to ASVS. *Id.* Plaintiffs allege Defendants Aparna and Sindhusha reported to Plaintiff Vinjarapu that her capital contribution was used to help pay for the purchase of the Haldi Restaurant, but Defendants have not provided Plaintiff Vinjarapu with any documentation establishing the purchase date or amount, the seller, the payment arrangements, or the payment sources for the restaurant. *Id.* at 7–8, ¶¶ 31–32.

CGC filed its Articles of Incorporation in Maryland on July 3, 2017. *Id.* at 8, ¶ 34. The original owners, Zeeshan Chowdary and Defendant Srikanth, sold complete ownership of CGC to Plaintiff Vinjarapu, Defendant Aparna, and Defendant Sindhusha as partners on November 3, 2018, via an Operating Agreement. *Id.* at 8, ¶¶ 35–37. Plaintiff Vinjarapu was designated as a silent partner of CGC in the Agreement. *Id.* at 8, ¶ 35. The purpose of CGC was to own and operate the Masala Pot Restaurant. *Id.* at 8, ¶ 33.

The partners purchased CGC for $200,000, $70,000 of which was from Plaintiff Vinjarapu as her initial capital contribution to CGC. *Id.* at 9 ¶ 38. Since her initial capital contribution, Plaintiff Vinjarapu has contributed more than $18,853 in cash and equipment purchases to CGC. *Id.* at 9, ¶ 39. Plaintiff Kandavilli loaned Defendant Sindhusha $15,000 so she could purchase her

ownership interest in CGC. *Id.* at 12, ¶ 52. Defendant Sindhusha's husband, Defendant Vamshi, made payments on the loan by a series of post-dated checks. *Id.* at 12, ¶ 53. Since giving Plaintiff Kandavilli this series of checks, Defendant Vamshi has put a stop payment order on some or all of the checks. *Id.* at 12, ¶ 54.

Both the ASVS and CGC Operating Agreements contain identical arbitration clauses that state:

> Any dispute, controversy or claim arising out of or in connection with this Agreement or any breach or alleged breach hereof shall, upon the request of any party involved, be submitted to, and settled by, arbitration in the city in which the principal place of business of the Company is then located, pursuant to the commercial arbitration rules then in effect of the American Arbitration Association . . . . Any award rendered shall be final and conclusive upon the parties and a judgment thereon may be entered in a court of competent jurisdiction.

ECF No. 13-3 at 19–21[1]; ECF No. 13-4 at 13.[2] Pursuant to the Operating Agreements, Defendants Aparna and Sindhusha were obligated to maintain the books and records and to collect and report all income of ASVS and CGC. ECF No. 1 at 9, ¶ 40. Plaintiffs allege Defendants Aparna and Sindhusha have failed to perform these obligations. *Id.* at ¶ 41.

Plaintiff Vinjarapu has requested that Defendants Aparna and Sindhusha provide her with ASVS' and CGC's bank statements, cash withdrawals and debit card transactions, and cash logs

---

[1] The Court cites to the page numbers generated by the CM/ECF filing system.

[2] Plaintiffs did not attach a copy of any of the Operating Agreements to their Complaint, but Defendants attached copies to their Motion. Though Plaintiffs did not provide the Court with these documents, the Court may still consider a document attached to a motion to dismiss so long as the document is "integral to the complaint and authentic." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164 (4th Cir. 2016) (quoting *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). Here, the Operating Agreements are integral to the Complaint as they provide the foundation for Plaintiffs' suit and contain the arbitration provisions at issue in this Motion. Defendants also attached as an exhibit a text message thread alleged to be between Plaintiff Kandavilli and "certain defendants," *see* ECF No. 13-5, but these messages are inadmissible, because they are neither integral to the Complaint nor are they authenticated.

so she can verify all withdrawals were for legitimate business expenses. *Id.* at 9–10, ¶¶ 42–45. Plaintiffs allege Defendants have refused to do so. *Id.* Plaintiffs also allege that Defendants Aparna and Sindhusha have fraudulently failed to report all income earned by the Haldi and Masala Pot Restaurants and have converted unreported income for their personal use. *Id.* at 10–11, ¶ 46. Furthermore, Plaintiffs allege that Defendants Aparna, Sindhusha, Srikanth, and Vamshi have reported as expenses items not legitimately procured in the course of business and have failed to pay proper Maryland sales taxes and comply with the Internal Revenue Code. *Id.* at 11–12, ¶¶ 47–50.

During its course of business, on January 31, 2019, CGC rented an apartment in which some of its employees, Defendants Janarthanan Thamilselvan, Vinorat Rajajegaram, and Satish Veeraperumal (collectively "Tenant Defendants"), still resided at the time of filing. *Id.* at 35, ¶ 132, 37 ¶¶ 141–42. After the property management company required that CGC have a guarantor for the lease, Defendant Srikanth asked Plaintiff Kandavilli to be a guarantor, to which he agreed. *Id.* at 35, ¶ 133–34. Plaintiff Kandavilli signed the lease as a co-guarantor, and Defendant Aparna signed the lease as the primary guarantor. *Id.* at 35, ¶ 136. Although Defendant Aparna was supposed to be responsible for paying rent for the apartment, the checks she wrote for CGC began to bounce, and Plaintiff Kandavilli had to make rental, maintenance, and utilities payments for the apartment. *Id.* at 35, ¶¶ 136–38. At the time of filing, Plaintiff Kandavilli had made over $13,284 in rental payments as co-guarantor of the lease. *Id.* at 9, ¶ 39.

Plaintiff Vinjarapu has requested accountings of all ASVS' and CGC's business transactions and has questioned the entries in the businesses' books and records. *Id.* at 12–13, ¶¶55–56. After she began questioning, Plaintiffs allege Plaintiff Vinjarapu was "cut off from access" to ASVS' and CGC's business information. *Id.* at 13, ¶ 56. All capital contributions in the

ASVS bank account have been withdrawn, and the bank account has been closed without notice to Plaintiff Vinjarapu. *Id.* at 12–13, ¶ 55. CGC's bank account has also been closed without notice to Plaintiff Vinjarapu. *Id.*

## PROCEDURAL BACKGROUND

On November 16, 2019, Plaintiffs filed suit in this Court, alleging conversion, breach of contract, unjust enrichment, misrepresentation, fraud, mail fraud, and wire fraud and requesting an accounting. ECF No. 1 at 1. On January 7, 2020, Defendants filed their Motion seeking to compel arbitration or, alternatively, for partial dismissal. ECF No. 13. Plaintiffs filed an opposition on January 17, 2020, ECF Nos. 20, 21, to which Defendants replied on January 23, 2020, ECF No. 22. This matter is now fully briefed, and the Court has reviewed Defendants' Motion and the responses thereto. For the following reasons, Defendants' Motion (ECF No. 13) is granted in part and denied in part.

## DISCUSSION

### I. Arbitration

The Court will first address Defendants' argument that all Plaintiffs' claims (Counts I–XVII) are subject to mandatory arbitration.

#### A. Standard of Review of Motion to Compel Arbitration

"The standard of review on a motion to compel arbitration under the [FAA] is 'akin to the burden on summary judgment.'" *Taccino v. Ford Motor Co.*, No. GLR-18-913, 2019 WL 1429263, at *3 (D.Md. Mar. 29, 2019) (quoting *Novic v. Midland Funding, LLC*, 271 F.Supp.3d 778, 782 (D.Md. 2017)). Pursuant to Rule 56, a movant is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

5

affidavits, if any, show that there is no genuine dispute as to any material fact. Fed.R.Civ.P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013) (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)). A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Thus, "to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." *Moss v. Parks Corp.*, 985 F.2d 736, 738 (4th Cir. 1993) (quoting *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990)). "In the context of a motion to compel arbitration under the FAA, 'the party seeking a jury trial must make an unequivocal denial that an arbitration agreement exists— and must also show sufficient facts in support.'" *Taccino*, 2019 WL 1429263, at *3 (quoting *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015)).

### B. Defendants' Motion to Compel Arbitration

Defendants argue that all Plaintiffs' claims in this matter are subject to the mandatory arbitration provisions contained in the Operating Agreements for ASVS and CGC. ECF No. 13-1 at 5–8. Plaintiffs argue that Plaintiff Vinjarapu cannot be compelled to arbitrate her claims against nonsignatory Defendants and Plaintiff Kandavilli cannot be compelled to arbitrate his claims because he did not sign the arbitration agreement. ECF No. 21 at 4–5. The Court finds that Plaintiff Vinjarapu can be compelled to arbitration and Plaintiff Kandavilli can be compelled to arbitration of Count XVII, but not of Counts XV and XVI.

The FAA "provides for the enforceability of arbitration agreements and specifies procedures for conducting arbitrations and enforcing arbitration awards." *McCormick v. Am. Online, Inc.*, 909 F.3d 677, 678 (4th Cir. 2018). Section 2 of the FAA mandates that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable," with limited exceptions. 9 U.S.C. § 2 (2018). The United States Court of Appeals for the Fourth Circuit has stated:

> application of the FAA requires demonstration of four elements: (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.

*Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 84 (4th Cir. 2016) (quoting *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 696 n.6 (4th Cir. 2012)).

*1. Plaintiff Vinjarapu is Bound to the Arbitration Provisions in the ASVS and CGC Operating Agreements.*

a. Plaintiff Vinjarapu's claims are encompassed by the arbitration agreements.

The arbitration provisions in both the ASVS and CGC Operating Agreements contain the language: "[a]ny dispute, controversy or claim arising out of or in connection with this Agreement or any breach or alleged breach hereof shall, upon the request of any party involved, be submitted to, and settled by, arbitration." ECF No. 13-3 at 19; ECF No. 13-4 at 13. It is undisputed that Plaintiff Vinjarapu is a party to the Operating Agreements, and she initialed the pages of the Agreements containing the arbitration provisions. *See id.* The other signatories of both Operating Agreements are Defendant Aparna and Defendant Sindhusha. *See generally* ECF Nos. 13-3, 13-4.

Plaintiff Vinjarapu makes claims against Defendants who did sign the Operating Agreements and against Defendants who did not. Plaintiffs argue that the nonsignatory Defendants cannot compel Plaintiff Vinjarapu's claims to arbitration, as the nonsignatory Defendants are not

7

parties to the Operating Agreements and cannot enforce them. ECF No. 21 at 5. Not so. One way a nonsignatory to an arbitration provision may still enforce that provision is through equitable estoppel. The doctrine of equitable estoppel can apply

> when the signatory to a written agreement containing an arbitration clause must rely on the terms of the . . . agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate.

*Am. Bankers Ins. Group, Inc. v. Long*, 453 F.3d 623, 627 (4th Cir. 2006) (quoting *Brantley v. Republic Mortgage Ins. Co.*, 424 F.3d 392, 395–96 (4th Cir. 2005)) (omission in original).

All Plaintiff Vinjarapu's claims (Counts I–XIV) arise from Defendants' alleged conduct operating the Haldi and Masala Pot Restaurants and their handling of ASVS' and CGC's business. Furthermore, Plaintiff Vinjarapu brings all fourteen of her claims against Defendant Aparna and Defendant Sinhusha, among other defendants that vary per Count. *See* ECF No. 1 at 14, 15, 17, 20, 21, 22, 24, 26, 28, 30, 31, 32, 33, 34. The arbitration provisions in both Operating Agreements state that "any party involved" can request that "any dispute, controversy or claim" related to the Agreement be resolved in arbitration. ECF No. 13-3 at 19; ECF No. 13-4 at 13. Through their Motion, the Defendants, including Defendant Aparna and Defendant Sindhusha, have requested Plaintiff Vinjarapu's claims be submitted to arbitration. Though some of Plaintiff Vinjarapu's claims are also against other Defendants who are not signatories of the arbitration agreement, that does not defeat Defendant Aparna's and Defendant Sindhusha's right under the agreement to compel arbitration of the claims. Moreover, because Plaintiff Vinjarapu's claims against the nonsignatory Defendants "arise out of and relate directly to the written agreement," the nonsignatory Defendants independently have a right to compel Plaintiff Vinjarapu's claims against them to arbitration as well. *Am. Bankers*, 453 F.3 at 627. Because Plaintiff Vinjarapu's claims all

relate to the operation of ASVS and CGC, they are encompassed by the arbitration agreement. Accordingly, Counts I–XIV must be resolved in arbitration.

      b. Plaintiff Vinjarapu's claims of fraud must be addressed by an arbitrator.

Plaintiffs argue that their claims cannot be sent to arbitration under the Operating Agreements because Plaintiff Vinjarapu was fraudulently induced to enter the Agreements containing the arbitration provisions. ECF No. 21 at 4. Defendants argue that under both federal and Maryland law, arbitration provisions are severable from the rest of a contract, and an agreement to arbitrate may still be enforced even if the rest of the contract is unenforceable. ECF No. 22 at 1–3. The Court agrees with Defendants.

The United States Supreme Court has held that under Section 4 of the FAA, a federal court may adjudicate a claim in which the plaintiff is alleging they were fraudulently induced into the *arbitration clause* but may not adjudicate a claim in which the plaintiff is alleging generally they were fraudulently induced into the entire agreement. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967). Reestablishing this holding in *Buckeye Check Cashing, Inc. v. Cardegna*, the Supreme Court stated,

> First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance. Third, this arbitration law applies in state as well as federal courts.

546 U.S. 440, 445–46 (2006). In that case, the Supreme Court concluded "because respondents challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract. The challenge should therefore be considered by an arbitrator, not a court." *Id.* at 446.

Here, Plaintiff Vinjarapu does not allege that she was fraudulently induced into agreeing to the arbitration provisions; she alleges she was fraudulently induced into signing the Operating Agreements as a whole. ECF No. 1 at 27, ¶ 107 ("Plaintiff Vinjarapu, in reliance on the representations mentioned above, executed the Limited Liability Company Operating Agreement of ASVS, LLC"); *id.* at 30, ¶ 118 ("Plaintiff Vinjarapu, in reliance of the representations mentioned above, executed the Limited Liability Company Operating Agreement of CGC, LLC"). This case, therefore, falls squarely within the Supreme Court's holding in *Buckeye Check Cashing*, because Plaintiffs are challenging the validity of the Operating Agreements generally. Accordingly, because Plaintiff Vinjarapu does not allege she was fraudulently induced into signing the arbitration provisions, the fraud claims do not prevent Plaintiffs from being compelled to arbitration under the Operating Agreement. *See Buckeye Check Cashing*, 546 U.S. at 446.

2. *Plaintiff Kandavilli is Only Partially Bound to Arbitration by the Doctrine of Equitable Estoppel.*

Plaintiffs argue that CGC's Operating Agreement states that it is not enforceable by any third party, and, therefore, Plaintiff Kandavilli cannot compel or be compelled to arbitration under the Agreement's arbitration provision. ECF No. 21 at 5. Defendants counter that Plaintiff Kandavilli can be compelled to arbitration under the Agreement, even though he is a nonsignatory, through the doctrine of equitable estoppel. ECF No. 22 at 3–7.

The Fourth Circuit recognizes certain situations in which a nonsignatory plaintiff can be compelled to arbitration via an arbitration agreement by the doctrine of equitable estoppel. *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 373 (4th Cir. 2012). "The doctrine of equitable estoppel applies (1) when the signatory's claims 'arise out of and relate directly to the written agreement'; or (2) when the signatory raises allegations of 'substantially interdependent or concerted misconduct by both the nonsignatory and one or more signatories to the contract.'" *In*

*re Titanium Dioxide Antitrust Litigation*, 962 F.Supp.2d 840, 849 (D.Md. 2013) (first quoting *Am. Bankers*, 453 F.3d at 627, then quoting *Brantley*, 424 F.3d at 396). The first situation is governed by the "direct benefit" test, which "recognizes that a nonsignatory should be estopped from denying that it is bound by an arbitration clause when its claims against the signatory 'arise[] from' the contract containing the arbitration clause." *Am. Bankers*, 453 F.3d at 628 (citing *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n, Inc.*, 384 F.3d 157, 164 (4th Cir. 2004)). The second situation is governed by the "intertwined claims" test, under which plaintiffs must comply with arbitration either (1) "when the signatory to a written agreement containing an arbitration clause must 'rely on the terms of the written agreement in asserting [its] claims' against the nonsignatory;" or (2) "'when the signatory [to the contract containing the arbitration clause] raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.'" *Brantley*, 424 F.3d 392, 395–96 (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)) (alterations in original). Under either the direct benefit test or intertwined claims test, courts "examine whether the plaintiff has asserted claims in the underlying suit that, either literally or obliquely, assert a breach of a duty created by the contract containing the arbitration clause." *Am. Bankers*, 453 F.3d at 629.

Plaintiff Kandavilli brings three claims: (1) breach of contract of a lease agreement of which he is a guarantor (Count XV), (2) unjust enrichment relating to the same lease agreement (Count XVI), and (3) breach of contract of a loan agreement (Count XVII). ECF No. 1 at 34–39, ¶¶ 131–49. Count XVII "arise[s] from" the Operating Agreement for CGC, but Counts XV and XVI do not. *See Am. Bankers*, 453 F.3d at 628 (citing *R.J. Griffin*, 384 F.3d at 164).

    a. Plaintiff Kandavilli cannot be compelled to arbitration for Counts XV and XVI.

Counts XV and XVI relate to a lease agreement for an apartment CGC rented for its employees. In the Complaint, Plaintiffs state that CGC entered this lease "in the course of its operation of the Masala Pot Restaurant." ECF No. 1 at 35, ¶ 132. CGC is the official tenant on the lease, and the primary guarantor is Defendant Aparna. *Id.* at 35, ¶¶ 132, 136. Plaintiff Kandavilli alleges Defendant Srikanth persuaded him to sign the lease as a co-guarantor, but Plaintiff Kandavilli was told he would not have to pay the rent. *Id.* at 35, ¶¶ 134–37. Plaintiff Kandavilli brings his first breach of contract claim (Count XV) against CGC, Defendant Aparna, and Defendant Sindhusha. *Id.* at 36. Both Defendant Aparna and Defendant Sindhusha are signatories to CGC's Operating Agreement containing the arbitration provision. *See generally* ECF Nos. 13-3, 13-4.

Defendants argue that because CGC entered the lease agreement "in the course of its operation" of its business, Plaintiff Kandavilli's claims related to the lease "arise from" the Operating Agreement. ECF No. 22 at 6. The Court disagrees. Plaintiff Kandavilli's lease claims arise from the lease contract. The tests for equitable estoppel examine "whether the plaintiff has asserted claims in the underlying suit that, either literally or obliquely, assert a breach of a duty created by the contract containing the arbitration clause." *Am. Bankers*, 453 F.3d at 629. Here, Plaintiff Kandavilli's lease claims are dependent upon the existence and breach of the lease contract, not upon the existence of the CGC Operating Agreement. Plaintiff Kandavilli's breach of contract claim in Count XV, therefore, does not meet the test for equitable estoppel, and it cannot be compelled to arbitration.

Plaintiff Kandavilli's second lease claim is for unjust enrichment against the Tenant Defendants only. None of the Tenant Defendants are signatories to the Operating Agreement containing the arbitration provision. Because the unjust enrichment claim in Count XVI does not

involve any signatories to the arbitration agreement, there is no one involved in Count XVI who can compel arbitration of this claim. Plaintiff Kandavilli's unjust enrichment claim in Count XVI, therefore, does not meet the test for equitable estoppel, and it cannot be compelled to arbitration.

      b. Plaintiff Kandavilli can be compelled to arbitration for Count XVII.

Count XVII relates to a $15,000 loan Plaintiff Kandavilli allegedly made to Plaintiff Sindhusha to purchase an interest in CGC. Plaintiff Kandavilli alleges Defendant Vamshi, Defendant Sindhusha's husband, made payments on this loan with a series of post-dated checks, on which Defendant Vamshi put a stop order after threating Plaintiffs they would cease repaying the loan if Plaintiff did not continue to invest money in both the Haldi and Masala Pot Restaurants. ECF No. 1 at 38, ¶¶ 146–49. Defendant Sindhusha is a signatory to the CGC Operating Agreement and to the arbitration clause contained within. *See* ECF No. 13-4.

Defendants argue that this breach of contract claim "relate directly to the parties' business dealings under the . . . CGC Operating Agreement[]," and therefore must be compelled to arbitration. ECF No. 13-1 at 9. Though Plaintiffs do not specifically reference this breach of contract claim in their Opposition, Plaintiff Kandavilli seems to maintain generally that he cannot be compelled to arbitration as a nonsignatory to the Operating Agreement. *See* ECF No. 21 at 5. The Court agrees with Defendants.

A nonsignatory can be bound to arbitration via equitable estoppel "when its claims against the signatory 'arise[] from' the contract containing the arbitration clause." *Am. Bankers*, 453 F.3d at 628. A claim can arise from the contract containing the arbitration clause "either literally or obliquely." *Id.* at 629. Here, Defendant Sindhusha's interest in CGC is at the heart of the dispute alleged in Count XVII: Plaintiff Kandavilli's loan was for the express purpose of securing Defendant Sindhusha's ownership interest in CGC. *See* ECF No. 1 at 38, ¶ 146 (alleging that

Plaintiff Kandavilli loaned Defendant Sindhusha $15,000 "to purchase an ownership interest in CGC, LLC"). Because the arbitration clause governs "[a]ny dispute, controversy or claim arising out of or in connection with this Agreement," a claim squarely focused on one of the signatory's interest in the company at least "obliquely" arises from the Operating Agreement. *Am. Bankers*, 453 F.3d at 629. Because the onus for proving that a claim should not be compelled to arbitration is on "'the party seeking a jury trial,'" *Taccino*, 2019 WL 1429263, at *3, the Court finds that Count XVII is sufficiently connected to the Operating Agreement to be subject to arbitration. Accordingly, Count XVII must be resolved in arbitration.

## II. Motion to Dismiss

There are two claims that are not subject to mandatory arbitration: Counts XV and XVI. The Court will now address Defendants' Partial Motion to Dismiss as to these claims.

### A. Standard of Review for a Motion to Dismiss

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. As stated in *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (internal citations omitted). Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

**B. Defendants' Motion for Partial Dismissal**

Plaintiff Kandavilli brings a breach of contract claim (Count XV) against Defendants CGC, Sindhusha, and Aparna and an unjust enrichment claim (Count XVI) against the Tenant Defendants. The Court will address each Count in turn.

*1. Plaintiff Kandavilli Is Not Entitled to Equitable Relief Under Count XV.*

Plaintiff Kandavilli's first remaining claim is for breach of contract of a lease agreement, for which he is a guarantor. For relief on this claim, Plaintiff Kandavilli seeks compensatory damages and "an order directing Defendants CGC, LLC, [Plaintiff Apurna], and [Plaintiff Sindhusha] to assume full responsibility for the lease . . . and to replace Plaintiff Kandavilli with another person to serve as guarantor of that lease." ECF No. 1 at 36. Defendants argue that Plaintiff Kandavilli is not entitled to the equitable relief of modifying the lease agreement, and Plaintiff's request for equitable relief must be denied. ECF No. 13-1 at 20. The Court agrees with Defendants.

By requesting this Court order that the parties modify the lease agreement, Plaintiff Kandivalli seeks the remedy of reformation. "Reformation is an equitable remedy that is only warranted when one of two circumstances exists: 'either there must be mutual mistake, or there must be fraud, duress, or inequitable conduct.'" *Jaguar Land Rover N. Am., LLC v. Manhattan Imported Cars, Inc.*, 738 F.Supp.2d 640, 650 (D.Md. 2010) (quoting *Md. Port Admin. V. John W. Brawner Contracting Co.*, 303 Md. 44, 59 (1985). To warrant reformation, the party seeking the

remedy must establish (1) the existence of one of the aforementioned circumstances in which reformation is available, and (2) "there is clear, convincing and satisfying proof of a mutual understanding and bargain that has not been accurately expressed." *Id.* at 651 (quoting *City of Balt. V. De Luca-Davis Constr. Co.*, 210 Md. 518, 524 (1956)). Notably, "[r]eformation is not a vehicle for rewriting contracts to reflect changed circumstances since the time of contract formation." *Id.*; *see Janusz v. Gilliam*, 404 Md. 524, 535 (2008) ("no party has a right to rescind or modify a contract merely because he finds, in the light of changed conditions, that he has made a bad deal" (quoting *Hartford Cty. v. Town of Bel Air*, 348 Md. 363, 384 (1998) (alterations omitted))).

Here, Plaintiffs have not alleged directly or indirectly any facts justifying reformation of the lease agreement. Plaintiff Kandavilli signed the lease as a co-guarantor—legally obligating himself to fulfill the lease's payment terms in the event of nonpayment by the tenant and other guarantor—and he was ultimately required to pay the rental amount. There was no fraud, duress, inequitable conduct, or mutual mistake. Plaintiff Kandavilli simply "made a bad deal." *Janusz*, 404 Md. at 535. Making a bad deal is insufficient justification for reformation. Accordingly, the Court will GRANT Defendants' Motion to the extent it seeks to dismiss the equitable relief requested in Count XV.

### 2. *Defendants Did Not Seek to Dismiss Any Part of Count XVI.*

Plaintiff Kandavilli's second remaining claim is for unjust enrichment of the Tenant Defendants, who live in an apartment rented by CGC, but for which Plaintiff Kandavilli has been paying rent. Interestingly, Defendants do not ask for relief in their Partial Motion to Dismiss or their Reply to Plaintiff's Opposition regarding Count XVI. In the section of the Motion addressing the three unjust enrichment Counts in the Complaint, Defendants only address Plaintiff Vinjarapu's claims (Counts IV and V) and fail to address Plaintiff Kandavilli's (Count XVI). *See*

16

ECF No. 13-1 at 18–21. Because Defendants omitted Count XVI from their Motion, the Court will allow Count XVI to proceed as plead.

### CONCLUSION

For the reasons stated herein, Defendants' Motion (ECF No. 13) is GRANTED IN PART and DENIED IN PART. Counts I–XIV and Count VXII will be COMPELLED to arbitration, and Count XV is DISMISSED only to the extent it seeks equitable relief in the form of reformation. A separate Order will follow.

Date: 11 March 2020

A. David Copperthite
United States Magistrate Judge